**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **SHAUNICE KING, Administrator of the ESTATE OF SHAUN P. KING, Deceased,**<br><br>**Plaintiff,**<br><br>v.<br><br>**ANGELA KING, and LINCOLN NATIONAL LIFE INSURANCE CO.,**<br><br>**Defendants.** | Case No. 3:23-CV-355-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Remand filed by Plaintiff Shaunice King ("Shaunice"). (Doc. 12). Defendants Angela King ("Angela") and Lincoln National Life Insurance Co. ("Lincoln") responded in opposition. Also pending are Defendants' Motions to Dismiss. (Docs. 17, 20). For the reasons set forth below, the Motion to Remand is denied, and Defendants' Motions to Dismiss are denied.

### BACKGROUND

Shaunice's father, Shaun King ("Shaun"), was employed by Wieland North America, Inc. ("Wieland"). (Doc. 16, p. 3). "Lincoln issued to Wieland a Group Policy to fund group life insurance benefits under Wieland's Plan." (*Id*.). "Wieland sponsored an employee welfare benefit plan and, as part of its employee welfare benefit plan, maintained the Group Policy insuring life and accidental death benefits." (*Id*.)

Angela, Shaun's then-wife, was named as his beneficiary to the Group Policy. By 2021, Shaun and Angela divorced—and on June 18, 2021, the Madison County Circuit Court

entered a Judgment of Dissolution of Marriage. (Doc. 1-1, pp. 165-174). The Dissolution included the following provision:

> In addition, as to any asset assigned to a party by this agreement, if evidence by an instrument naming the non-owning party a beneficiary, a successor in interest, or giving any rights of survivorship, such interest is hereby specifically revoked by the non-owning party, as if revoked on the face of the instrument. The waiver shall include, but is not limited to, annuities, life insurance policies, certificates of deposit, bonds, bills, notes, etc.

(*Id*. at p. 173).

On October 6, 2021, Shaun died without changing the beneficiary of the Group Policy. (Doc. 13, p. 4; Doc. 1-1, p. 188). Later in October 2021, Shaunice "sent written notice to Lincoln National's home office that Angela King was not the designated beneficiary on Shaun King's life insurance policy . . . ." (Doc. 13, p. 4; Doc. 1-1, p. 71). But in November 2021, Lincoln paid approximately $263,000 in death benefits to Angela. (Doc. 13, p. 4; Doc. 1-1, p. 68).

In February 2022, Shaunice filed a Petition for Letters of Administration of the Estate of Shaun, Proof of Death, and Proof of Heirship in St. Clair County Circuit Court. (Doc. 1-1, pp. 185-189). On February 22, 2022, the St. Clair County Court appointed Shaunice as legal representative of Shaun's estate. (*Id*. at p. 183). On April 1, 2022, Lincoln was subpoenaed to provide the "[c]laim [f]ile regarding claim no. 11923073 on the life of Shaun [ ] [ ], Dec'd." (*Id*. at pp. 177-178).

On May 11, 2022, Shaunice filed a Petition for Citation to compel the appearance of Angela. (Doc. 1-1, p. 157). "In the citation petition, [Shaunice] contends Angela [ ] is not the proper party to possess the proceeds of [Shaun's] life policy because she effectively waived her beneficial rights to it, and Shaun [ ] did not thereafter re-designate her as beneficiary." (Doc. 13, p. 4). On August 17, 2022, Angela moved to dismiss and quash the petition for

citation. (Doc. 1-1, pp. 137-141).

In September 2022, Shaunice moved to amend the Petition for Citation to include "a request for imposition of constructive trust to prevent her unjust enrichment relating to circumstances by which she is in possession of assets which properly belong to the Estate of Shaun [ ] [ ]." (*Id*. at pp. 118-119). Again, on October 18, 2022, Angela moved to dismiss and quash the petition for citation. (*Id*. at p. 43). In December 2022, Shaunice filed a Second Amended Petition for Citation to "include a claim against the insurer, [Lincoln], for its unlawful failure and withholding of payment of the policy proceeds to the Estate." (*Id*. at pp. 7-16). Lincoln was served with the petition on January 3, 2023. (Doc. 1, p. 2).

On February 1, 2023, Lincoln and Angela removed the case to this district court, asserting that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1132, and 1367. (*Id*.). Defendants assert that this Court has federal-question jurisdiction under 28 U.S.C. § 1331 because certain claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Defendants also allege "this Court has supplemental jurisdiction over any claims not within the scope of ERISA § 1132(a) because such claims are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (*Id*. at p. 3). On February 9, 2023, Shaunice moved to remand the case back to state court. (Doc. 12). Defendants filed a response in opposition to Shaunice's Motion to Remand on March 13, 2023. (Docs. 16, 19). Defendants also filed Motions to Dismiss, arguing that the complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Docs. 17, 20).

Page 3 of 19

DISCUSSION

I.     **Motion to Remand**

A plaintiff may challenge removal by moving to remand the case back to state court. Remanding to state court is appropriate for (1) lack of district court subject matter jurisdiction or (2) a defect in the removal process. 28 U.S.C. §§ 1446, 1447(c); *GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 625–26 (7th Cir. 2013). Indeed, federal courts "possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (7th Cir. 2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). District courts have subject matter jurisdiction only in cases that raise a federal-question and cases in which there is diversity of citizenship among the parties. *See* 28 U.S.C. §§ 1331–32. Unless Shaunice's case falls into one of these two categories, the Court must remand.

A.     **Complete Preemption**

"In enacting ERISA, Congress included two distinct and powerful preemption provisions: complete preemption under ERISA § 502, 29 U.S.C. § 1132, and conflict preemption under ERISA § 514, 29 U.S.C. § 1144." *Halperin v. Richards*, 7 F.4th 534, 540 (7th Cir. 2021). As Lincoln notes, "complete preemption is a jurisdictional doctrine and provides a basis for removal." (Doc. 16, p. 9). Indeed, "[a]rtful pleading on the part of a plaintiff to disguise federal claims by cleverly dressing them in the clothing of state-law theories will not succeed in keeping the case in state court." *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008).

To determine whether a claim is completely preempted by ERISA, courts use the following two-part analysis:

> [I]f an individual, at some point in time, could have brought his claim under ERISA

> § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by ERISA § 502(a)(1)(B).

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). Before analyzing *Davila*'s first step, the Court must determine whether Wieland created an ERISA employee welfare benefit plan and, if so, whether Shaun was a participant in that plan. *See Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 724 (7th Cir. 2017) (noting that "to analyze *Davila*'s first step, we must initially determine whether the hospital had created an ERISA employee welfare benefit plan and, if so, whether Studer was a participant in that plan"). Lincoln contends that the Group Policy is an ERISA employee welfare benefit plan. ERISA defines an "employee welfare benefit plan" as the following:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . .

ERISA § 3(1), 29 U.S.C. § 1002(1). The following elements must be shown for ERISA to cover an employee welfare plan:

> (1) a plan, fund, or program,
> (2) established or maintained,
>
> (3) by an employer or by an employee organization, or by both,
>
> (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits,
>
> (5) to participants or their beneficiaries.

*Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 537 (7th Cir. 2000) (quoting *Ed Miniat, Inc. v.*

*Globe Life Ins. Grp., Inc.*, 805 F.2d 732, 738 (7th Cir. 1986). Lincoln has shown these elements—and Shaunice does not dispute that ERISA covers the Group Plan.

### i. Ability to Bring Claims Under ERISA § 502

"Only participants, beneficiaries or fiduciaries (and the Secretary of Labor) may sue under ERISA [§ 502], 29 U.S.C. § 1132(a) . . . ." *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997). ERISA defines "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). It further defines "beneficiary" as "a person designated by a participant, or by the terms of the employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

While Shaunice does not fit neatly within ERISA's definition of beneficiary, "ERISA was not designed to protect merely those beneficiaries already receiving benefits, but also 'putative beneficiaries.'" *Sladek v. Bell Sys. Mgmt. Pension Plan*, 880 F.2d 972, 976 (7th Cir. 1989) (citing *Smart v. State Farm Ins. Co.*, 868 F.2d 929, 933 (7th Cir. 1989)). "Jurisdiction in a case like this one depends on whether [a] [plaintiff] has at least an 'arguable claim,' [ ], and taking her theory of the case in a light most favorable to her . . . ." *Riordan*, 128 F.3d at 552.

"To the extent doubt remains, *Firestone [Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18 (1989)] tells [courts] to treat as a 'participant' for jurisdictional purposes anyone with a colorable claim to benefits . . ., an approach equally applicable when a person claiming to be a 'beneficiary' files suit." *Id.* (quoting *Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991)). To determine whether a plaintiff has a colorable claim, courts first look

to see whether a plaintiff seeks to strike a participant's election based on a theory that the election was invalid or void. If striking the election means the plaintiff receives the policy proceeds, then courts look to see if the claim requires an interpretation or application of the terms of the plan. *See e.g., Sladek*, 880 F.2d 972; *Riordan*, 128 F.3d 549. [1] Finally, if the claim then requires an interpretation of the plan, the plaintiff has a colorable claim.

Shaunice is attacking Shaun's election of Angela as the beneficiary of the Group Policy. The Second Amended Petition for Citation refers to Shaun's "group life insurance policy with Lincoln National Life Insurance Company, d/b/a Lincoln Financial Group, having policy number SA3-840-444435-01." (Doc. 1-1, p. 11). The Second Amended Petition also alleges the following:

- At the time Lincoln paid death benefits on account of the death of Shaun [ ] to Angela [ ], his ex-wife, Lincoln was or should have been aware that *Shaun [ ] had not effectively redesignated Angela [ ] as beneficiary on the Lincoln Policy after their divorce*;

- Angela [ ] was not entitled to receive the proceeds of the [Group] Policy because she knowingly and voluntarily waived any and all interest in those proceeds prior to his death, and she was aware of the superior claim to the life insurance proceeds by the Estate of Shaun [ ] before she accepted them;

- The Estate of Shaun [ ] was entitled to receive the proceeds of the [Group] Policy *because there was no effective designation of beneficiary by Shaun [ ] as of the time of his death*;

---

[1] *Sladek* and *Riordan* are distinguishable on multiple fronts. But like the plaintiff in *Sladek*, 880 F.2d at 978, who "was a beneficiary under the Plan in the absence of a valid election[,]" here "[i]f, at the death of a Covered Employee, there is no named or surviving beneficiary, Lincoln will pay the benefits to the executor or administrator of the Covered Employee's estate." (Doc. 16-1, p. 46). In other words, Shaunice, the administrator of Shaun's estate, would be a beneficiary under the Group Policy in the absence of a valid designation of beneficiary. Similarly, like the plaintiff's theory in *Riordan*, where the last election the participant made was invalid or void because the decedent's first designation was irrevocable, here Shaunice's theory challenges the last election Shaun made as invalid or void because "Shaun [ ] had not effectively redesignated Angela [ ] as beneficiary on the Lincoln Policy after their divorce." (Doc. 1-1, p. 13).

- Lincoln is liable to this Estate, as a matter of law, for payment of the proceeds of the [Group] Policy, as herein above set forth.

(*Id*. at pp. 13-14) (emphasis added). Thus, to determine whether there was an effective designation of beneficiary by Shaun as of the time of his death, the Court then must review the Group Policy. In other words, Shaunice could have brought her claims under ERISA § 502(A)(1)(B).

### ii.   *Duty Outside ERISA*

Shaunice has two separate claims. First, Shaunice "asserts that retention of the proceeds by Angela [ ] constitutes an unjust enrichment to her." (Doc. 13, p. 4). Second, Shaunice "contends that Lincoln [ ] is liable to the estate by operation of law, under Section 503(b-5) of the Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5/503(b-5)(4)." (*Id.*).

Shaunice's unjust enrichment claim is premised on the existence of the Group Policy. Shaunice seeks proceeds under the Group Policy. Shaunice also challenges the designation of Angela as the beneficiary under the Group Policy. Thus, her unjust enrichment claim is completely preempted by ERISA. *See Di Joseph v. Standard Ins. Co.*, 776 F. App'x 343, 347–48 (7th Cir. 2019) (finding that plaintiff's state-law claims, including unjust enrichment, were completely preempted by ERISA); *see also Maatman v. Lumbermens Mut. Cas. Co.*, 2010 WL 415384, at *5 (N.D. Ill. Jan. 28, 2010) (collecting cases).

Shaunice's claim that Lincoln is liable under Section 503(b-5) of the Illinois Marriage and Dissolution of Marriage Act is also premised on the existence of the Group Policy.[2] To

---

[2] According to Shaunice's later filings, she has "always maintained that the claim she was asserting to Lincoln [ ] is predicated on [Angela's] [ ] conduct which constituted her waiver of benefits payable to her under [Shaun's] [ ] beneficiary designation." (Doc. 22, p. 7).

determine whether Lincoln is liable under Section 503(b-5) of the Act, the Court needs to interpret the Group Policy. *See Rice v. Panchal*, 65 F.3d 637, 644 (7th Cir. 1995) ("[C]omplete preemption is required where a state law claim cannot be resolved without an interpretation of the contract governed by federal law.").

Accordingly, both of Shaunice's claims meet *Davila*'s second step—and are completely preempted.

### B. The Probate Exception

"[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006). "But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.* at 312. The exception applies to both federal-question and diversity suits. *Jones v. Brennan*, 465 F.3d 304, 306–07 (7th Cir. 2006).

Shaunice argues that "[b]ecause of the nature of a citation proceeding is both summary and *in rem*, a party seeking a citation for the benefit of the estate need not set forth a straight-forward legal or equitable claim." (Doc. 13, p. 7). Shaunice then cites a number of cases in support of the following proposition: "[t]he probate court's jurisdiction extends to all property of a decedent, no matter where or when it may be found." (*Id.* at p. 8).

The problem is the life insurance benefits are not in the custody of the state probate court. *See Marshall*, 547 U.S. at 311-12 ("the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes the federal court from endeavoring to dispose of property *that is in the custody* of a

state probate court") (emphasis added). The Second Amended Petition for citation requests the Court to "[d]irect[ ] Angela [ ] to immediately restore all assets concealed, converted, embezzled or unjustly retained by her upon payment to her on or about November 9, 2021 by Lincoln [ ] [ ] of Two Hundred Sixty-Three Thousand Dollars ($263,000.00) on account of the death of Shaun [ ]." (Doc. 1-1, p. 15). Indeed, "[t]he judgment sought would just add assets to the decedent's estate; it would not reallocate the estate's assets among contending claimants or otherwise interfere with the probate court's control over and administration of the estate." *Gustafson v. zumBrunnen*, 546 F.3d 398, 400 (7th Cir. 2008).

Put differently, Shaunice seeks an *in personam* judgment against Angela and Lincoln— "not the probate or annulment of a will." *Marshall*, 547 U.S. at 312. "In fact, Shaun died intestate and the insurance benefits at issue were paid to Angela over three months before the Estate was even created, passing entirely outside of the Estate and never into the probate court's control." (Doc. 16, p. 15). Accordingly, the probate exception does not apply.

### C.    Impact of Ancillary Proceeding

Shaunice also argues that "[t]he removal statute only allows for removal of independent suits, and not for ancillary or supplementary proceeding." (Doc. 13, p. 8). According to Shaunice, "the citation proceeding itself, filed by Plaintiff in order to discover information about and to recover assets belonging to the decedent's estate, is supplementary to the state court's probate jurisdiction to determine the estate's right to a res." (*Id*. at p. 9).

The Court disagrees. "[W]here the supplemental proceeding is not merely a mode of execution or relief, but where it, in fact, involves an independent controversy with some new and different party, it may be removed into the federal court." *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 724 (7th Cir. 2012) (*quoting Buford v. Strother*, 10 F. 406, 407 (C.C.D. Iowa 1881)).

Here, the ancillary proceeding involves an independent controversy with Lincoln—a new and different party. Accordingly, the ancillary proceeding argument is rejected.

## II. Motions to Dismiss

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 570. A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

### A. Considering the Group Policy at the Motion to Dismiss Stage

Courts may consider documents attached to the pleadings without converting a motion to dismiss into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the plaintiff's claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); *see Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012) (noting that "[a] motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice"). Here, the Second Amended Petition for Citation refers to Shaun's "group life insurance policy with Lincoln National Life Insurance Company, d/b/a Lincoln Financial Group, having policy number SA3-840-444435-01." (Doc. 1-1, p. 11). A review of the allegations in the Second Amended

Petition also reveals that the Group Policy is central to Shaunice's claims. Thus, the Court will consider the Group Policy at this stage of the litigation.

## B. Conflict Preemption

### i. *Affirmative Defenses and Rule 12(b)(6)*

"Preemption under section 1144(a) of ERISA is a federal defense to state-law claims, otherwise known as 'conflict preemption,' as opposed to 'complete preemption' under section 1132(a), which creates federal jurisdiction." *Smith v. Lutheran Life Ministries*, 2021 WL 5937789, at *2 (N.D. Ill. Dec. 16, 2021); *see also Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 601 (7th Cir. 2008) ("[c]onflict preemption, unlike complete preemption, actually is a true preemption doctrine . . . .").

The Seventh Circuit has noted:

> Preemption, however, is "an affirmative defense upon which the defendants bear the burden of proof." *Fifth Third Bank ex rel. Tr. Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005). "Affirmative defenses do not justify dismissal under Rule 12(b)(6)." *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003). Moving for judgment on the pleadings under Rule 12(c) is the more appropriate way to address an affirmative defense. *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010). This is not one of those cases in which the plaintiff has pleaded herself out of court, and so the difference between Rules 12(b)(6) and 12(c) cannot be disregarded. *See, e.g., Logan v. Wilkins*, 644 F.3d 577, 582–83 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). The district court thus erred by penalizing [plaintiff] for failing to anticipate an affirmative defense in her complaint and dismissing the action based on FDCA preemption.

*Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019).

Not only is preemption an affirmative defense, but recently, the Seventh Circuit acknowledged that "[i]t follows from this structure and from the plain language of Rule 8(c)(1) that an affirmative defense must be raised in the answer, not by motion." *Luna Vanegas*

*v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022) (citing *Vasquez v. Indiana Univ. Health, Inc.*, 40 F.4th 582, 588 (7th Cir. 2022)).

Dismissals based on affirmative defenses may be appropriate when the pleadings and matters subject to judicial notice clearly prove that a plaintiff's claim is barred as a matter of law. Indeed, the Seventh Circuit has acknowledged:

> With a narrow and pragmatic exception for a plaintiff who has pleaded herself out of court, the appropriate vehicle for resolving an affirmative defense is a motion for judgment on the pleadings under Rule 12(c), not a Rule 12(b)(6) motion. *Benson*, 944 F.3d at 645; *see also Burton v. Ghosh*, 961 F.3d 960, 964–65 (7th Cir. 2020) (collecting cases); *cf. Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (example of pragmatic exception where complaint unambiguously set forth dates establishing statute-of-limitations defense). "Observing the distinction is necessary to allocate correctly the burdens of pleading and proof," *H.A.L. N.Y. Holdings, LLC v. Guinan*, 958 F.3d 627, 632 (7th Cir. 2020), and serves an important notice function. *Burton*, 961 F.3d at 965, citing *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), among others.

*Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806–07 (7th Cir. 2020).

Notably, a year after *Benson*, 944 F.3d 639, the Court in *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 483 (7th Cir. 2020), resolved defendants' preemption defense at the motion to dismiss stage, but clarified that it was to "head off another round of appeals in the multidistrict litigation." The Court in *Bell* did not overrule *Benson*—and accordingly, the Court will not dismiss Shaunice's claims based on Defendants' preemption defense.

### ii. Merits of Preemption Defense

Even if the Court considers Defendants' preemption defense on a 12(b)(6) motion to dismiss, their arguments are unconvincing.[3] Lincoln argues that "[Shaunice's] state law

---

[3] While the Court specifically addresses Lincoln's preemption argument, Angela's preemption argument is similar—and also fails for the reasons discussed herein.

claims 'relate to' an ERISA Plan and are preempted." (Doc. 18, p. 6).[4] In doing so, Lincoln discusses E*gelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001), and *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009), to argue that "the Supreme Court [ ] [has] emphasized the importance of plan documents and decidedly held that a spouse could not waive plan life insurance benefits through a divorce decree." (Doc. 18, p. 8). Lincoln also discusses *Melton v. Melton*, 324 F.3d 941 (7th Cir. 2003) noting that the "case involv[ed] essentially the same fact scenario as this case, the Seventh Circuit, relying on *Egelhoff*, concluded that ERISA preempted Illinois state law with respect to determining the rightful beneficiary of proceeds from an ERISA-regulated life insurance policy." (*Id*. at p. 9).

Notably, *Egelhoff*, *Kennedy*, and *Melton* all addressed motions for summary judgment, not motions to dismiss. Courts have "urge[d] litigants to rely on cases that were decided in the same procedural posture." *DeJaynes v. Powell*, 2022 WL 2657194, at *2 (N.D. Ill. July 8, 2022). "In memoranda supporting or opposing a motion to dismiss, cases that were decided on summary judgment (or on appeal of summary judgment) are not particularly helpful because of the differing standards." *Id*. (citations omitted). "Indeed, the Court is on dangerous ground when it relies on summary judgment opinions when it is deciding motions to dismiss." *Id*. (citations omitted).

Besides the procedural posture of *Egelhoff*, *Kennedy*, and *Melton*—this case is also a post-distribution suit. Lincoln has tried to frame the issue differently by arguing that "[t]he

---

[4] The Court rejects Lincoln's other argument that "Plaintiff's state law claims are also preempted because they are exclusively governed by ERISA's civil enforcement provision." (Doc. 18, p. 10). *See Connecticut Gen. Life Ins. Co. v. Grand Ave. Surgical Ctr., Ltd.*, 2014 WL 151755, at *2 (N.D. Ill. Jan. 14, 2014) (acknowledging that "even when ERISA completely preempts a state claim, it does not follow that the claim should be dismissed").

Supreme Court and every Circuit to have considered Plaintiff's waiver argument, has unequivocally rejected it in favor of *Kennedy*'s plan documents rule." (Doc. 23, p. 2). But the Court questions the application of the plan documents rule in this post-distribution suit against a named beneficiary and a non-plan administrator.[5] In *Est. of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131 (3d Cir. 2012), the Third Circuit noted:

> The District Court relied heavily on *Kennedy's* statement that the plan documents rule promotes "simple administration, avoid[s] double liability, and *ensur[es] that beneficiaries get what's coming quickly*, without the folderol essential under less-certain rules." 555 U.S. at 301, 129 S.Ct. 865 (*quoting Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 283 (7th Cir.1990) (Easterbrook, J., dissenting) (emphasis added)). The emphasized portion of this statement should not, however, be read in a vacuum or divorced from the context in which it arose. Both *Kennedy* and *Fox Valley* involved suits against plan administrators who had yet to distribute benefits. When read with that in mind, the goal of ensuring that beneficiaries "get what's coming quickly" refers to the expeditious distribution of funds *from plan administrators*, not to some sort of rule providing continued shelter from contractual liability to beneficiaries who have *already received* plan proceeds. In this case, when URL pays the benefits to Adele, as it must, she will "get what's coming" under the plan. If, after distribution, her right to these funds is challenged because of her common law waiver, that challenge will be litigated as an ordinary contract dispute. Accordingly, to the extent that ERISA is concerned with the expeditious payment of plan proceeds to beneficiaries, permitting suits against beneficiaries after benefits have been paid does not implicate any concern of expeditious payment or undermine any core objective of ERISA.

*Id.* at 136–37.

Indeed, "*Kennedy* left open the question whether a common law waiver has any effect on what should happen after the funds are distributed to the designated beneficiary." *Cunningham v. Hebert*, 2016 WL 6442180, at *4 (N.D. Ill. Nov. 1, 2016) (citing *Kennedy*, 555 U.S.

---

[5] In *Kennedy* and *Melton*, the plan administrators were parties. Here, Lincoln asserts that Wieland is the Plan Administrator—and Wieland is not a party. (Doc. 16, p. 4). Also, the Group Policy's 2021 Form 5500 refers to Amy Kuhn as the plan administrator. (Doc. 16-2, p. 2). Amy Kuhn appears to be the Manager of Employee Benefits at Wieland. (Doc. 21-1, p. 1).

at 299 n.10) ("Nor do we express any view as to whether the Estate could have brought an action in state or federal court against [the ex-wife] to obtain the benefits after they were distributed"). Here, Shaunice is suing Angela, Shaun's ex-wife, to obtain benefits after they were distributed. *See e.g., Andochick v. Byrd*, 709 F.3d 296, 301 (4th Cir. 2013); *Metlife Life & Annuity Co. of Connecticut v. Akpele*, 886 F.3d 998, 1007 (11th Cir. 2018) ("a party who is not a named beneficiary of an ERISA plan may not sue the plan for any plan benefits. A party, however, may sue a plan beneficiary for those benefits, but only after the plan beneficiary has received the benefits."); *Gelschus v. Hogen*, 47 F.4th 679, 685 (8th Cir. 2022) ("[l]ater state and federal appellate court cases consistently hold that ERISA does not preempt post-distribution suits against recipients"). While Shaunice is also suing Lincoln, and ERISA may ultimately resolve the claim against Lincoln—the Court need not resolve this issue on a 12(b)(6) motion to dismiss. For these reasons, Defendants' preemption arguments are rejected at this stage of the litigation.

## C. Angela's Remaining Arguments[6]

### i.     *Redesignation*

Angela argues that Shaunice "fails to establish a cognizable legal claim because the decedent redesignated and reaffirmed Angela [ ] as the designated beneficiary post-divorce pursuant to Illinois law." (Doc. 21, p. 11). Angela argues that Shaun "redesignated and reaffirmed Angela [ ] as the beneficiary of his life insurance policy *after* the divorce." (*Id.*). To make this argument, Angela notes that "[w]hen the Manager of Employee Benefits reminded

---

[6] According to Shaunice, Angela's motion to dismiss remains pending in state court. (Doc. 13, p. 4). Shaunice responded to Angela's motion to dismiss in state court, but has not responded to Angela's Motion to Dismiss filed in this Court. Despite Shaunice's lack of response, "Rule 12(b)(6) prevents courts from granting unopposed motions solely because there is no response." *Marcure v. Lynn*, 992 F.3d 625, 633 (7th Cir. 2021).

the Decedent of his right to change the beneficiary of his ERISA Life Insurance in light of his divorce, he again intentionally chose not to do so, affirmatively choosing instead to redesignate Angela [ ] as his beneficiary." (*Id*. at p. 12). Angela also points to a "text message just one week prior to his untimely death when he stated that Angela [ ] would still receive his insurance benefits if he died." (*Id*.).

Not only is this argument better presented and resolved at summary judgment, but also Angela relies on Section (b-5)(2) of the Illinois Marriage and Dissolution of Marriage Act. That provision, in relevant part, states:

> (2) If a judgment of dissolution of marriage is entered after an insured has designated the insured's spouse as a beneficiary under a life insurance policy in force at the time of entry, the designation of the insured's former spouse as beneficiary is not effective unless:
>
> * * *
>
> (B) the insured redesignates the former spouse as the beneficiary after entry of the judgment;

750 Ill. Comp. Stat. 5/503. The problem is this provision does not apply "to life insurance policies subject to regulation under [ERISA], the Federal Employee Group Life Insurance Act, 5 U.S.C. 8701 *et seq*., or any other federal law that preempts the application of those paragraphs." *Id*. Thus, whether the provision applies depends on whether ERISA preempts the redesignation provision—an item that has not been briefed.

Finally, Angela relies on at least one exhibit that Shaunice argues is an "anecdotal hearsay conversation." (Doc. 1-1, p. 37). If district courts "cannot consider inadmissible hearsay, over proper objections, in deciding summary judgment[,]" *Lewandowski v. City of Milwaukee*, 823 F. App'x 426, 429 (7th Cir. 2020), then the court cannot consider potentially

inadmissible hearsay in deciding motions to dismiss. For these reasons, the redesignation argument is also rejected.

### ii.  Unjust Enrichment

Next, Angela argues that "it cannot be said that Angela King was 'unjustly' enriched when she retained a benefit which the law mandated that she receive, nor can such an outcome be deemed to violate fundamental principles of justice, equity and good conscience since this very same outcome is expressly provided for under applicable state and federal law." (Doc. 21, p. 17). The problem is it is disputed whether the outcome is expressly provided for under state and federal law. Angela also argues that a "claim for unjust enrichment cannot lie where a contract already governs the relationship of the parties." (*Id*. at p. 18). According to Angela, "the [Group] Policy is a contract which governs the relationship of the parties, and which dictates that the benefits be paid to the designated beneficiary." (*Id*.). This argument fails as Shaunice is not a party to the Group Policy—and the Group Policy does not govern her relationship with Angela.

### iii.  Equitable Defense of Laches

Finally, Angela argues that the action must be dismissed based on the equitable defense of laches. (Doc. 21, p. 19). The problem is the equitable defense of laches is an affirmative defense. *Suggs v. United States*, 256 F. App'x 804, 805 (7th Cir. 2007); *see also Topping v. Fry*, 147 F.2d 715, 718 (7th Cir. 1945). "[D]ismissal based on an affirmative defense is appropriate only where the validity of the defense is apparent from the face of the complaint and so unmistakable that the action is frivolous." *Suggs*, 256 F. App'x at 805; *see also Jeffries v. Chicago Transit Auth.*, 770 F.2d 676, 679 (7th Cir. 1985) ("[l]aches is generally a factual question not subject to summary judgment").

Here, Angela's equitable defense of laches is premature as it is not apparent from the pleadings that Shaunice unreasonably delayed her decision to bring the action.

## CONCLUSION

For these reasons, the Motion to Remand (Doc. 12) filed by Plaintiff Shaunice King is **DENIED**. Additionally, the Motions to Dismiss filed by Defendants (Docs. 17, 20) are **DENIED**. Plaintiff shall have until **June 8, 2023**, to amend her complaint consistent with the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

**DATED:** May 10, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**